**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **CORTEZ LITTLE #44478,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 3:26-cv-00176** |
| **v.** | ) | |
| | ) | **Judge Trauger** |
| **CHAD YOUKER,** ***Captain*****,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION AND ORDER

Cortez Little, a pre-trial detainee in the custody of the Williamson County Jail in Franklin, Tennessee, filed a pro se Complaint under 42 U.S.C. § 1983 and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc to 2000cc-5, concerning the removal of his religious materials, including his Bible. (Doc. No. 1). He also alleges claims pursuant to Tenn. Code. Ann. § 41-21-211. Plaintiff later filed a Motion for Leave to Amend Complaint (Doc. No. 10) and an Application for Leave to Proceed In Forma Pauperis (Doc. No. 12). The court must begin with the filing fee.

### I. FILING FEE

Under the Prisoner Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915(a), a prisoner bringing a civil action may be permitted to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). Plaintiff has filed an IFP Application and a certified Certificate of Prisoner Institutional/Trust Fund Account Activity. (Doc. Nos. 8, 12). From a review of these materials, the court finds that Plaintiff lacks sufficient financial resources from which to pay the full filing fee in advance. Therefore, his IFP Application (Doc. No. 12) is **GRANTED**.

Under § 1915(b), Plaintiff nonetheless remains responsible for paying the full filing fee. The obligation to pay the fee accrues at the time the case is filed, but the PLRA provides prisoner-plaintiffs the opportunity to make a "down payment" of a partial filing fee and to pay the remainder in installments. Accordingly, Plaintiff is hereby assessed the full civil filing fee of $350, to be paid as follows:

(1) The custodian of Plaintiff's inmate trust fund account at the institution where he now resides is **DIRECTED** to submit to the Clerk of Court, as an initial payment, "20 percent of the greater of – (a) the average monthly deposits to Plaintiff's account; or (b) the average monthly balance in Plaintiff's account for the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(b)(1).

(2) After the initial filing fee is fully paid, the trust fund officer must withdraw from Plaintiff's account and pay to the Clerk of this Court monthly payments equal to 20% of all deposits credited to Plaintiff's account during the preceding month, but only when the amount in the account exceeds $10. Such payments must continue until the entire filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

(3) Each time the trust account officer makes a payment to this court as required by this Order, he or she must print a copy of the prisoner's account statement showing all activity in the account since the last payment made in accordance with this Order and submit it to the Clerk along with the payment. All submissions to the Court must clearly identify Plaintiff's name and the case number as indicated on the first page of this Order, and must be mailed to: Clerk, United States District Court, Middle District of Tennessee, 719 Church Street, Nashville, TN 37203.

The Clerk of Court is **DIRECTED** send a copy of this Order to the administrator of inmate trust fund accounts at Williamson County Jail to ensure that the custodian of Plaintiff's inmate

trust account complies with that portion of 28 U.S.C. § 1915 pertaining to the payment of the filing fee. If Plaintiff is transferred from his present place of confinement, the custodian of his inmate trust fund account **MUST** ensure that a copy of this Order follows Plaintiff to his new place of confinement for continued compliance.

## II. MOTION FOR LEAVE TO AMEND COMPLAINT

Plaintiff's Motion for Leave to Amend Complaint (Doc. No. 10) is **GRANTED**. The operative pleading in this case is now the Proposed Amended Complaint attached to the Motion for Leave to Amend Complaint. (*See* Doc. No. 10-1). The Clerk is **DIRECTED** to docket that pleading as the Amended Complaint.

## III. PRISON LITIGATION REFORM ACT SCREENING

The Amended Complaint (Doc. No. 10-1) is before the court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," *id.* § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in Section 1915(e)(2)(B). *Id.* § 1915A(b).

The court must construe a pro se complaint liberally, *United States v. Smotherman*, 838 F.3d 736, 739 (6th Cir. 2016) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), and accept the plaintiff's factual allegations as true unless they are entirely without credibility. *See Thomas v. Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citing *Denton v. Hernandez*, 504 U.S. 25, 33 (1992)).

Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520121 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

The Amended Complaint alleges claims under 42 U.S.C. § 1983 and RLUIPA concerning the removal of Plaintiff's religious materials and retaliation against Plaintiff for exercising (or attempting to exercise) his religion.

Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under Section 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. *Dominguez v. Corr. Med. Servs.,* 555 F.3d 543, 549 (6th Cir. 2009) (quoting *Sigley v. City of Panama Heights*, 437 F.3d 527, 533 (6th Cir. 2006)); 42 U.S.C. § 1983. Plaintiff's Section 1983 claims are premised on the violation of his First Amendment rights.

"The Free Exercise Clause of the First Amendment . . . provides that 'Congress shall make no law . . . prohibiting the free exercise [of religion].'" *Maye v. Klee*, 915 F.3d 1076, 1083 (6th Cir. 2019) (quoting U.S. Const. amend. I). "In any free exercise claim, the first question is whether 'the belief or practice asserted is religious in the [plaintiff's] own scheme of things' and is 'sincerely held.'" *Id.* (quoting *Kent v. Johnson*, 821 F.2d 1220, 1224 (6th Cir. 1987)). Where a plaintiff makes this threshold showing, the court must consider whether a regulation that "impinges on inmates' constitutional rights . . . is reasonably related to legitimate penological interests." *Id.*

(quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)). If not, "the inquiry ends, and the prisoner prevails." *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 461 (6th Cir. 2019) (citations omitted). If so, then the court balances "(1) whether the prisoner possesses alternative avenues for exercising his religion; (2) whether accommodating the prisoner would affect 'guards and other inmates' or 'the allocation of prison resources generally'; and (3) whether 'obvious, easy alternatives' exist that suggest 'the regulation is not reasonable.'" *Id.* (quoting *Turner v. Safley*, 482 U.S. 78, 89-91 (1987)).

RLUIPA provides stronger protection for the religious liberty of incarcerated individuals than the First Amendment. *Colvin v. Caruso*, 605 F.3d 282, 296 (6th Cir. 2010) (citing *Lovelace v. Lee*, 472 F.3d 174, 199-200 (4th Cir. 2006)). To state a claim under RLUIPA, a prisoner must (1) "demonstrate that he seeks to exercise religion out of a 'sincerely held religious belief'" and (2) "show that the government substantially burdened that religious exercise." *Cavin v. Mich. Dep't of Corr.*, 927 F.3d 455, 458 (6th Cir. 2019) (quoting *Holt v. Hobbs*, 574 U.S. 352, 361 (2015)). If the prisoner satisfies these elements, then the burden shifts to the government to show "that the burden furthers 'a compelling government interest' and 'is the least restrictive means' of doing so." *Id.* (quoting 42 U.S.C. § 2000cc-1(a)).

Here, the Amended Complaint alleges facts from which the court may infer that Plaintiff has a sincerely held belief that reading and studying the Bible is part of his religious practice. (*See* Doc. No. 10-1 at 2). For example, the Amended Complaint alleges that Plaintiff is a "devout Christian" with "deeply held religious beliefs to read the Bible daily"; Plaintiff leads community Bible studies and Men of Valor Christian programs; he attends the Church of Christ; and he observes all Christian holidays. (*Id.*)

The Amended Complaint also alleges that, on or about January 18, 2025, the Williamson County Sheriff's Office, under the direction of Chad Youker, seized all physical Bibles in the county jail. A "Bible Ban" has been in place since that time, and any physical book (not just the Bible) considered "religious" by Chad Youker has been destroyed pursuant to this county policy. (*Id*. at 1). Although county officials later uploaded "digital copies" of the Bible "onto an electronic kiosk and tablets,"[1] only inmates with "privileged access" can access them on a limited basis (8:00 am to 8:00 pm). (*Id*. at 1-2). In addition, access is routinely withdrawn as punishment and, according to the Amended Complaint, "[j]ail staff regularly obstructs access to practice religion or simply read the Bible on even holidays such as Christmas, Easter, and Good Friday." (*Id*. at 2). Plaintiff has offered to pay "all costs" associated with owning a Bible. (*Id*. at 3).

Further, the Amended Complaint alleges that Defendant Youker retaliated against Plaintiff after he filed grievances and a lawsuit pertaining to the Bible Ban. Plaintiff's pod was "raided" shortly after Plaintiff filed this lawsuit, and Defendant Youker "ripped the tv out of the wall and screamed threats about requesting Bibles" during the raid. (*Id*. at 7-8).[2] Plaintiff's pod was the only pod searched.

A reasonable factfinder could conclude that actions taken pursuant to a jail policy that prohibits inmates at the Williamson County Jail from possessing physical Bibles, as alleged in the

---

[1] The Amended Complaint alleges that inmates had no access to Bibles in any form "for months." (Doc. No. 10-1 at 3).

[2] Specifically, the Amended Complaint alleges that Youker screamed, "You want to file grievances and lawsuits about your fucking Bibles? Then I'm taking away all of your tablets. You forget you are in Williamson County where I make the goddamn law." (*Id*. at 8). Another jail official, Deputy Fairchild, allegedly said to Plaintiff at that time, "Keep filing your fucking grievances about your faggot-ass Bibles and I'll make sure you never see a goddamn Bible again. I'll lock all tablets so your faggot-ass can think about being butt fucked in prison." (*Id*.) Fairchild is not named as a Defendant to this action.

Amended Complaint, and/or punishes inmates for practicing (or attempting to practice) their religion impinges on inmates' constitutional and RLUIPA rights. *Brown v. Page*, No. 2:20-cv-00070, 2021 WL 288754, at *3 (M.D. Tenn. Jan. 27, 2021) (finding plaintiff had stated viable First Amendment and RLUIPA claims based on restricted access to Bible). "[L]imiting an inmate's access to the religious literature that he is required to read as part of his practice constitutes a substantial burden on his religious exercise." *Yates v. Painter*, 306 F. App'x 778, 780 (3d Cir. 2009) (citing *Washington v. Klem*, 497 F.3d 272, 282-83 (3d Cir. 2007)).

At least as to Plaintiff's Free Exercise claim, it may be relevant that his restricted access did not preclude him from reading the Bible at all but rather made it more difficult.[3] However, because Defendant has not filed any responsive pleadings, the court "do[es] not have information before [it] about all of" the factors relevant to evaluating a Free Exercise claim. *See Arauz v. Bell*, 307 F. App'x 923, 928 (6th Cir. 2009). And as to Plaintiff's RLUIPA claim, the availability of an alternative means of practicing his belief "does not play into" the analysis. *Cavin*, 927 F.3d at 461 (citing *Holt*, 574 U.S. at 361-62).

Further, a reasonable factfinder could conclude that the allegations of the Amended Complaint state colorable retaliation claims under Section 1983 against Defendant Youker in his individual capacity. *See Hill v. Lappin*, 630 F.3d 468, 472 (6th Cir. 2010) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394, 398 (6th Cir. 1999) (en banc) (internal quotation marks omitted) (To establish a claim of First Amendment retaliation, "a prisoner must prove that (1) he engaged in protected conduct, (2) the defendant took an adverse action that is capable of deterring a person of

[3] It is unclear from the Amended Complaint whether Plaintiff was one of the inmates with "privileged access" to the Bible on a digital reader or kiosk.

ordinary firmness from continuing to engage in that conduct, and (3) the adverse action was motivated at least in part by the prisoner's protected conduct.")).

In short, the allegations presently before the court therefore permit Plaintiff's Section 1983 and RLUIPA claims to proceed for further development of the record.[4]

These allegations also allow the court to reasonably infer that the challenged Williamson County Jail policies violate Tennessee's statute requiring inmate access to a Bible during non-working hours. Tenn. Code. Ann. § 41-21-211 ("Each inmate shall be provided with a Bible, which the inmate may be permitted to peruse in the inmate's cell at such times as the inmate is not required to perform prison labor.").

Because Plaintiff alleges facts from which the court may infer that these alleged violations were a result of official policies, his claim may proceed against Captain Youker in his official capacity, which is functionally a claim against Williamson County itself. *See Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003). The Section 1983 and state-law claims also will proceed against Captain Youker in his individual capacity, but any individual-capacity RLUIPA claim will be dismissed. *See Haight v. Thompson*, 763 F.3d 554, 569-70 (6th Cir. 2014) (RLUIPA does not permit money damages against prison officials in their individual capacities).

## V. CONCLUSION

Having screened the Amended Complaint pursuant to the PLRA, the court finds that it states viable claims under the First Amendment (free exercise, retaliation), RLUIPA, and Tennessee state law. These claims shall proceed against Captain Youker in his official and

---

[4] The court notes that the allegations set forth in the Amended Complaint match—word for word—the allegations made by another pro se prisoner-plaintiff in a different case against Chad Youker filed in this court recently. The court reminds Plaintiff of his obligations under Federal Rule of Civil Procedure 11, which include certifying that the facts he alleges have evidentiary support or likely will have evidentiary support after a reasonable opportunity for investigation.

individual capacities, except the RLUIPA claim which shall proceed against Captain Youker in his official capacity only.

Accordingly, the Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons (AO 440) and USM 285 form) for Defendant Chad Youker. Plaintiff **MUST** complete the service packet and return it to the Clerk's Office within **30 DAYS** of the entry of this Order. Failure to do so may result in the dismissal of this case. Upon return of the properly completed service packet, the Clerk is **DIRECTED** to issue summons to the U.S. Marshals Service for service on Defendant Youker. Fed. R. Civ. P. 4(b) and 4(c)(3).

Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B), this action is **REFERRED** to the Magistrate Judge to enter a scheduling order for the management of the case, to dispose or recommend disposition of any pre-trial, non-dispositive motions, to issue a Report and Recommendation on all dispositive motions, and to conduct further proceedings, if necessary, under Rule 72(b), Fed. R. Civ. P., and the Local Rules of Court.

The court's determination that the complaint states a colorable claim for purposes of this initial screening does not preclude the court from dismissing any claim at any time for reasons set forth in 28 U.S.C. § 1915(e)(2), nor does it preclude Defendant from filing a motion to dismiss any claim under Federal Rule of Civil Procedure 12.

Plaintiff is forewarned that his prosecution of this action will be jeopardized if he should fail to keep the Clerk's Office informed of his current address.

It is so **ORDERED**.

Aleta A. Trauger
United States District Judge